**Edward LYMAN, Plaintiff,**

v.

**NABIL'S INC., Defendant.**

**Civ. A. No. 95–2183–EEO.**

United States District Court, D. Kansas.

Oct. 10, 1995.

Karen K. Howard, Kansas City, MO, Gwen G. Caranchini, Law Office of Gwen G. Caranchini, Kansas City, MO, for plaintiff.

Julia Riggle McKee, C. Brooks Wood, Hillix, Brewer, Hoffhaus, Whittaker & Wright, L.L.C., Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant's (hereinafter Nabil's or defendant) Motion To Dismiss Count I Of Plaintiff's Complaint And Motion To Dismiss, Or In The Alternative, A Motion For A More Definite Statement For Count II Of Plaintiff's Complaint (Doc. # 2). Plaintiff (hereinafter Lyman or plaintiff) opposes these motions. For the reasons set forth below, Defendant's motion as to Count I is granted and Defendant's motion as to Count II is denied.

### Factual Background

This litigation centers around plaintiff's allegation that he was subjected to a sexually hostile work environment that affected a term, condition or privilege of his employment as a restaurant manager at Nabil's. Lyman alleges that discriminatory acts directed against women in his workplace were sufficiently pervasive to seriously affect his own working environment. Lyman specifically alleges that he was present when defendant's owner, Nabil Saleh ("Saleh"), offensively touched and directed offensive language at women employees under Lyman's supervision. Lyman further alleges that the women complained to him about these offensive acts, that Saleh made sexual comments about the women to Lyman, and that Saleh made Lyman transfer the women from restaurant to restaurant in retaliation for their complaints. Lyman alleges that he suffered emotional distress as a direct and proximate result of Saleh's alleged discriminatory acts. Lyman also alleges defendant retaliated against him by firing him for his complaining about the alleged discriminatory acts, his being supportive of women complaining of those acts, and his refusal to cooperate in defendant's retaliation against women.

### Discussion

■ A complaint may not be dismissed for failure to state a claim upon which relief may be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1148 (10th Cir. 1989), *cert. denied*, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). The court must view all reasonable inferences in favor of the plaintiff and the pleadings must be liberally construed. *Id.* The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

I. *Defendant's Motion to Dismiss Count I of Plaintiff's Complaint for Failure to State a Claim Upon Which Relief May Be Granted*

■ Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e et seq., prohibits employment discrimination on account of race, color, religion, sex and national origin. Sexual harassment is a recognized form of employment discrimination proscribed by Title VII. *Hicks v. Gates*

**1446**

*Rubber Co.,* 833 F.2d 1406, 1413 (10th Cir. 1987). A hostile work environment occurs when " 'such [sexual] conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986) (quoting 29 C.F.R. § 1604.11(a)(3)). "In a claim of a hostile work environment because of sexual harassment, the employee must prove the following for a prima facie case: (1) that the employee belongs to a protected group; (2) that the employee was subject to 'unwelcome' sexual harassment; (3) that the harassment complained of affected a 'term, condition, or privilege' of employment." *Haehn v. City of Hoisington,* 702 F.Supp. 1526, 1529 (D.Kan. 1988). "To show that the harassment was due to her sex, plaintiff must prove that 'but for the fact of her sex, she would not have been the object of harassment.' " *Id.* (quoting *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982)).

■ In Count I, Lyman alleges that he was subjected to a sexually hostile work environment directed at women. He asserts the novel theory that laboring in such an environment affected a term, condition, or privilege of his employment. Nabil's argues for dismissal because the conduct Lyman alleges was not offensive to Lyman's own gender.

The court knows of no principle of law previously applied in this district or the Tenth Circuit to support such a claim. The novelty of Lyman's claim, however, does not persuade the court to grant defendant's motion to dismiss Count I. "The court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1357, at 341–43 (1990). Despite this caveat, the court is persuaded that Title VII does not permit a hostile working environment claim on the facts Lyman alleges.

Lyman first argues by analogy that his situation is similar to cases in which whites suffered "associational" injuries due to racial discrimination directed at minorities. He urges that this court should apply the reasoning of those cases to his Title VII claim of emotional distress caused by the alleged sexually hostile workplace for women under his supervision. Lyman bases his argument primarily on two racial discrimination cases, *Clayton v. White Hall School Dist.,* 875 F.2d 676 (8th Cir.1989), and *Chandler v. Fast Lane, Inc.,* 868 F.Supp. 1138 (E.D.Ark.1994). The courts in *Clayton* and *Chandler* allowed white plaintiffs to bring Title VII claims under the rationale that the alleged discriminatory conduct injured the white employees by preventing them from associating with minorities. *Clayton,* 875 F.2d at 679 (" 'persons aggrieved' included those who were not themselves the objects of discrimination, but were nevertheless injured '[by] the loss of important benefits from interracial associations.' ") (quoting *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 209–10, 93 S.Ct. 364, 366–67, 34 L.Ed.2d 415 (1972)); *Chandler,* 868 F.Supp. at 1143–44 (concluding that "an employment practice that impinges on [a white person's right to associate with African–Americans] is actionable under Title VII").

In our view, the associational benefit cases differ from the instant case. Those cases relied upon *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), a case in which the white plaintiff was injured by the loss of benefits from interracial associations. *Id.* at 209–10, 93 S.Ct. at 366–67. The instant case involves sexual discrimination of persons other than of plaintiff's gender. No court has extended Title VII's contemplation of associational benefits to the type of claim Lyman alleges. His reliance on *Clayton* and *Chandler* is misplaced. In short, Lyman cannot make out the first element of his prima facie case, because he is not within the "protected group" contemplated by Title VII.

Lyman points to *Hicks v. Gates Rubber Co.,* 833 F.2d 1406 (10th Cir.1987), a case in which a female plaintiff alleged that she was a victim of a sexually hostile work environ-

ment. *Id.* at 1409–10. Lyman mistakenly attempts to infer from *Hicks* that he need not establish the second element of his prima facie case; i.e., that he was a person who was subjected to unwanted sexual harassment. *See Haehn,* 702 F.Supp. at 1529. An issue in *Hicks* was whether "incidents involving employees other than the plaintiff are relevant in establishing a generally hostile work environment." *Id.* at 1416. The *Hicks* court stated that "[e]ven a woman who was never herself the object of harassment might have a Title VII claim if she was forced to work in an environment where such harassment was pervasive." *Id.* at 1416. Lyman latches onto the above language and argues that a man may state a claim under Title VII for a sexually hostile work environment directed at women, even though he himself is not the object of harassment. We do not agree. *Hicks* merely approved the use of incidents of sexual harassment directed at a woman's female co-workers as evidence supporting the woman's claim that such harassment was also directed at her. *Id.* at 1415–16. The case in no way supports the proposition that a hostile work environment directed toward one gender can give rise to a Title VII claim by violating the rights of the opposite gender.

Title VII provides that a "person claiming to be aggrieved may bring a civil action." 42 U.S.C. § 2000e–5(f)(1). The Act generally defines unlawful employment practices as actions taken against an individual employee due to that employee's race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e–2. The Act does not specifically address whether an unlawful business practice directed at a person in a protected class is actionable by a person who, although outside the protected class, is allegedly injured by the unlawful practice.

Neither party to this action cites any case in which a court has directly considered whether men have standing to sue for alleged injuries suffered as a result of discrimination directed at women. Most courts that have considered the question seem to hold that males lack standing to sue because they are not "persons aggrieved" under Title VII when they seek redress for injuries suffered due to alleged discrimination directed at women. The Ninth Circuit, in *Patee v. Pacific Northwest Bell Telephone Co.,* 803 F.2d 476 (9th Cir.1986), concluded that "a male employee could not maintain a Title VII action as a person aggrieved because of sex-based wage discrimination against women." *Id.* at 479. The court in *Patee* reasoned that males were outside the Title VII zone of interests. "The male workers do not claim that they have been discriminated against because they are men." *Id.* at 478. *See also Spaulding v. University of Washington,* 740 F.2d 686, 709 (9th Cir.1984) (male faculty member cannot bootstrap job grievance into Title VII claim, even where female faculty members have cognizable claim), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984), *overruled on other grounds by Atonio v. Wards Cove Packing Co.,* 810 F.2d 1477, 1482 (9th Cir.1987); *Siegel v. Board of Educ.,* 713 F.Supp. 54, 56 (E.D.N.Y.1989) (permitting men to assert claim for sex discrimination against women would pervert Title VII purpose of requiring equal treatment); *AFSCME v. Nassau County,* 664 F.Supp. 64, 66 (E.D.N.Y.1987) (male plaintiffs not persons aggrieved because no claim that alleged underpayment in "traditionally female jobs" discriminated against men because they were men); *Linskey v. Heidelberg Eastern, Inc.,* 470 F.Supp. 1181, 1187 (E.D.N.Y.1979) (male plaintiff lacked standing to claim discriminatory employment practices against women). *But see Allen v. American Home Foods, Inc.,* 644 F.Supp. 1553, 1557 (N.D.Ind.1986) (reasoning that the scope of the language "person aggrieved" confers Title VII standing to men injured by an unlawful employment practice directed at women), *modified,* 658 F.Supp. 451 (N.D.Ind.1987); *Pennsylvania Nurses Assoc. v. Commonwealth of Pennsylvania,* 1991 WL 120200, *4 (M.D.Pa.1988) (males considered "persons aggrieved" by wage discrimination directed at female-dominated nursing profession).

The court is persuaded that *Patee* and like opinions provide the better reasoned approach. Males simply do not fall within the protected class and thus have no standing to assert a claim such as Lyman's. We, therefore, hold that under the facts alleged in

Count I, Lyman does not state a claim upon which relief may be granted.

## II. *Defendant's Motion To Dismiss, Or, In The Alternative, A Motion For More Definite Statement For Count II Of Plaintiff's Complaint*

■ Title VII prohibits an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation, the plaintiff must prove: "(1) [he] engaged in a protected opposition to discrimination or participation in a proceeding arising out of the discrimination, (2) adverse action by the employer subsequent to the protected activity, and (3) a causal connection between the employee's activity and the adverse action." *Griffith v. State of Colo., Div. of Youth Services,* 17 F.3d 1323, 1331 (10th Cir.1994) (citation omitted).

■ In his complaint, Lyman alleges that "when the women resisted Saleh's advances, Saleh would make derogatory comments about the women to Lyman and make Lyman move them from restaurant to restaurant." Complaint, ¶ 11. Lyman also alleges that he "resisted Saleh's attempts to retaliate against women employees who resisted [Saleh's] advances and was supportive of women who came to him to complain about Saleh's actions." Complaint, ¶ 17. Lyman's complaint further states that he "complain[ed]" of Saleh's discriminatory actions, by alleging "[t]hat the actions of Nabil's Inc. in retaliating against Lyman for his *complaints* is intentional permitting Lyman to make claim for punitive damages." Complaint, ¶ 20 (emphasis added). Nabil's argues that prior cases have required that protected opposition consist of "distinct action" by the plaintiff. Nabil's argues that because Lyman's alleged "resistance" to Saleh's conduct and his being "supportive" of the female victims does not constitute distinct action, his complaint is conclusory and fails to state facts sufficient to allege plaintiff engaged in protected opposition.

■ We believe that plaintiff's complaint is sufficient with respect to his claim of retaliatory discharge. His allegations of resistance and supportiveness amount to an allegation that he made an informal complaint, which constitutes distinct action. The Tenth Circuit has said that to constitute protected opposition a "plaintiff need not make a 'formal' complaint, as informal complaints to management and other sorts of notification will suffice." *Phelps v. Sears Roebuck and Co.,* No. 90–4133, 1993 WL 523202 (10th Cir. Dec. 15, 1993); *see also Steinle v. Boeing Co.,* 884 F.Supp. 424, 430 (D.Kan.1995) ("informal complaint to management qualifies as protected activity"). Thus, protected opposition includes informal complaints expressing support of co-workers who are subjected to discriminatory employment practices. Lyman sufficiently alleged such informal complaints. He has also alleged that he "would not 'cooperate'" and that "Saleh[ ] retaliat[ed] against Lyman by demoting and firing him." Complaint, ¶ 18. Plaintiff, therefore, has sufficiently alleged that he was discharged for protesting an unlawful employment practice.

We further find that plaintiff's complaint satisfies the requirements of Rule 8 of the Federal Rules of Civil Procedure. Fed. R.Civ.P. 8(a)(2) ("a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, defendant's alternative motion for more definite statement should be denied.

IT IS THEREFORE ORDERED that defendant's Motion to Dismiss Count I of Plaintiff's Complaint for Failure to State a Claim Upon Which Relief May Be Granted (Doc. # 2–1) is granted. Defendant's Motion to Dismiss, Or, In The Alternative, A Motion for More Definite Statement for Count II of Plaintiff's Complaint (Doc. # 2–2) is denied.